## Spencer v. Hogg's Administrator.

(Decided March 17, 1933.)

FRED K. COPE for appellant.

FIELD McLEOD and DAVID J. HOWARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In 1922, E. E. Hogg died intestate while a resident of Woodford county, Ky. His two sons, Hiram and St. Clair Hogg, were appointed and qualified as administrators of his estate. There survived him a number of children, and his widow, Louise Hogg. Some years thereafter a suit was filed in the Woodford circuit court to settle his estate, which pended on the docket for some considerable time, and on final submission at the May, 1931, term of the court a personal judgment was rendered against the administrators in favor of the

estate, or some one interested therein, for the sum of $7,012.23, with interest from that date, and costs. An execution issued thereon was returned no property found, and on August 29, 1931, this action was filed against the defendants in the judgment, which was and is in the nature of a bill of discovery of assets of defendants with which to satisfy the judgment. Attachments were procured against defendants, which were levied upon certain property claimed to be owned by them, and certain garnishees were summoned and ordered to answer, which was later done. Later, and on December 1, 1931, the petition was amended, and the appellant and defendant below, Lillie Spencer, was therein made a party defendant to the action, and summons was served upon her. In the amendment plaintiffs averred that defendant, St. Clair Hogg, on December 22, 1925, owned a large farm in Woodford county, bordering on the Kentucky river, and on the latter date he executed a mortgage on it to his mother-in-law, the appellant and defendant, Lillie Spencer, to secure an alleged note that day executed to her by him for the sum of $6,000; that it was not recorded in the county clerk's office of Woodford county until April 25, 1931, and on May 6, 1931, the appellant filed an action against her son-in-law, and his wife, in the Woodford circuit court to recover judgment on the note and for the foreclosure of her mortgage lien; that the defendants therein were duly summoned and failed to answer, and a default judgment was taken in which the land was ordered to be sold by the master commissioner of the county, and he advertised it for sale pursuant to that judgment.

Before the sale was made, St. Clair Hogg and his wife deeded the land to appellant, which was followed by an order dismissing her action against them as settled. Plaintiffs averred that the mortgage was fraudulent, was without consideration, and was executed for the purpose of cheating, hindering, and delaying the creditors of St. Clair Hogg, including plaintiffs, in the collection of their debts, and that the judgment of sale of the mortgaged farm was collusive and likewise voidable as against the creditors of St. Clair Hogg. The prayer of the amended petition asked that it be so adjudged and that the involved farm be sold and its proceeds applied to the payment of plaintiffs' debt.

Defendants, Lillie Spencer and St. Clair Hogg, filed separate answers, almost identical in terms, and in which they denied the material averments in the amended petition, but they were represented in the trial court by separate attorneys. Proof was heard orally before the court, with the exception of the deposition of Senator A. H. Hargis, taken by plaintiffs, and upon submission the court upheld the averments of the amended petition, and adjudged that the mortgage referred to was fraudulent, as well as the judgment enforcing it, and set aside and canceled each of them, and ordered the land sold as prayed for in the amended petition, and from that judgment appellant (Lillie Spencer alone) prosecutes this appeal.

The sole question involved is one of fact, and it is to be solved from the testimony heard at the trial and the law applicable to the facts it tends to establish. Some preliminary questions are discussed by counsel for appellant, but which do not relate to the merits and which we think are each untenable. An illustration of them is that the judgment sought to be collected is one against the estate of the decedent, E. E. Hogg, and which can be realized only out of his estate, and from which premise it is argued that neither St. Clair Hogg nor his codefendants in the judgment, Hiram Hogg, are individually liable therefor. The error in that conclusion lies in the fact that the debt sought to be collected is not one owed by, or due from, the estate of which the Hogg brothers were the personal representatives. On the contrary, it is a debt due from them individually to that estate, and they are designated in the pleadings of the case in which the judgment was rendered as administrators only for the purpose of describing their relationship to the estate that they attempted to administer. They were guilty of a devastavit as such personal representatives, and became personally liable to the estate for their defalcation, some or all of which it is intimated in the record were obligations that they owed the estate individually. It is therefore clear that this argument of counsel is entirely falacious and untenable. The other technical ones are of no greater materiality or more defensively applicable. We will therefore proceed to a consideration and determination of the merits of the case.

This case is not different from others of its kind

that have heretofore been considered by this court. The participants in the attacked transactions expressly testified that the debt for which the mortgage was given by St. Clair Hogg to the appellant, his mother-in-law, represented good faith loans by the latter to the former covering a period of 12 years or more beginning in the year 1912, shortly after the marriage of the debtor to the daughter of the creditor, at which time there was a loan of $50. From time to time after that, they testified that other loans were made ranging from $100 to $400, until in 1919 the total indebtedness was $1,500. Following that, and up to the time of the alleged date of the execution of the mortgage, $3,500 additional advances were made by the mother-in-law to her son-in-law in different amounts, the largest of which was $1,000. Appellant, according to her testimony, then concluded that all of the notes for the various sums so lent should be secured in some manner, and she communicated her determination to her daughter, the wife of her debtor, and the latter coincided therewith and went to Jackson, Ky., about six miles from which appellant resided, and prepared his note and mortgage to his mother-in-law for *exactly* $6,000, which both he and appellant say represented the accumulated indebtedness with interest to that date. They testified that the principal of the aggregated loans then totaled exactly $5,000, and they testified also to the coincidental fact that the accumulated interest on all of such scattered loans from their respective dates amounted *exactly* to $1,000, making the total amount of $6,000, for which the note and mortgage were executed.

Notwithstanding notes were given for the various alleged loans, none of them was presented or accounted for at the trial. It is insisted, however, by counsel for appellant, in avoidance of the effect of that omission, that neither his client nor her mortgagor were asked to produce those notes. If, however, they existed, he had the right to inquire concerning them and to ask for their production if they were still in existence, or, if they were lost, to establish that fact and explain how they were lost. Neither did appellant prove, or attempt to prove, the manner by which she advanced the various loans to her son-in-law; i. e., whether by checks drawn on a bank, or by cash. If it was done by the delivery of cash upon each occasion to her son-in-law, she would then be called upon to explain why she kept available

such amounts of cash for that or any other purpose, especially in view of her testimony that during all of that period she did business with various banks. If she made the advances by checks, then their indorsement and collection by her son-in-law would be potent evidence in her favor. Notwithstanding she testified about the number of banks with which she did business, she failed to furnish the amount of that business or the amount of the deposits she carried in any of such banks, or whether their dates corresponded with the making of any of the alleged loans, except she testified to having on deposit in a bank in Jackson, Ky., at one time as much as $2,100. However, it is not shown that any loan was made while that deposit existed, or how long it lasted.

She was engaged in operating a country store at the place where she resided, and filed the invoice of her gross sales therefrom for the year 1922, amounting to a little more than $17,000, but she did not, even for that year, testify as to the amount of her profits or her expenses, nor did she state what amount of her profits were expended in living expenses. In other words, her testimony, according to our interpretation of it, renders it exceedingly doubtful if she was ever financially able to make the loans that she claims she did. The testimony of her codefendant and son-in-law is, in substance, the same as that given by her, but he has considerable difficulty in explaining what he did with the borrowed money. Some of it he claims that he invested in a coal company that he and his brother organized, and in which he later sold his one-half interest for $4,000; but the proceeds of that sale found its way into property, the title to which was held by his wife, the daughter of appellant. It will thus be seen that, if there was no other evidence in the case than that which we have related, an impartial court might hesitate in giving it unqualified acceptance.

But there are other proven facts in the case which weaken the credibility of that testimony and go far towards fortifying the chancellor's judgment in discarding it. The lady deputy county court clerk who recorded the mortgage at the belated hour testified that she did so while appellant waited in her office, and, when the recording was completed, the proper certification was made on it, and it was delivered to her,

which, as she stated, was returned to her son-in-law, the mortgagor, at the time the deed was executed conveying the farm in question, which was but a comparatively short time before the institution of this litigation; but he failed to produce it at the trial, although he did preserve and produce the note. He and his mother-in-law testified that the mortgage was written in longhand by him, and was made to his mother-in-law, and dated December 22, 1925. The recording deputy clerk testified that the mortgage she recorded was typewritten, and it happens to be the one that was lost. The certificate of acknowledgement made by the notary public as first written was for a mortgage to Mrs. Lillie Wilson, and the certificate was dated December 22, 1929. After it was so recorded, the clerk who did so, upon instructions from the notary, changed the record so as to make the certificate bear date of December 22, 1925, instead of the same month and day in 1929, and the acknowledgment was changed so as to make the mortgagee Lillie Spencer instead of Lillie Wilson.

In addition to such suspicious facts, both appellant and her son-in-law testified that the delay in recording the mortgage was to assist the son-in-law in his various business transactions by withholding from the public records the fact of the incumbrance upon his land. The son-in-law also, according to the testimony of one or more of his brothers, stated to him or them that his farm was unincumbered, and that there was no debt against it, and which was untrue if at that time his mortgage to his mother-in-law was a bona fide transaction.

In addition to all of the foregoing, Senator Hargis testified that he was well acquainted with the appellant, who had for a number of years lived at his house, and that she in 1930 approached him to prepare a mortgage to her by her son-in-law on his farm in Woodford county, Ky., to secure what she then said was an indebtedness of $6,000 due her from him, and she instructed the witness to date the mortgage back to the date its record now bears, and witness stated that he prepared a mortgage in accordance with that request and delivered it to appellant. It is true she denied all of that testimony and sought to impeach it because of ill feeling that she said existed between her and the witness, Hargis. There are other circumstances in the

case of more or less suspicious tendency, but we deem it unnecessary to either mention or discuss them.

The applicable law in such cases is that ordinarily, and between strangers, the burden is upon the one who attacks an executed deed or other written instrument to prove the alleged vice in its execution by clear and convincing testimony; but, where the parties thereto occupy a confidential relationship, and the circumstances are such as to cast suspicion upon the bona fides of the transaction, the burden is then shifted to the one seeking to uphold the instrument to prove its good faith execution by like character of testimony. See the recent case of Fuson v. Fuson, 247 Ky. 380, 57 S. W. (2d) 42, decided February 10, 1933, and the cases therein listed. The rule is that the chancellor's finding of facts will not be disturbed by this court on appeal where the evidence is conflicting and there is no more than a doubt in our minds. In view of the testimony appearing in this record, and which we have briefly recited, we cannot conclude that under that rule we should disturb the judgment appealed from. On the contrary, we coincide with the court's conclusion that the attacked mortgage in this case and the debt it attempts to secure were each bogus, and entered into for the purpose of defrauding the creditors of St. Clair Hogg.

Wherefore the judgment is affirmed.